IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE DAUGHERTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:19-CV-419-MAB |
| ) | |
| ANDREW GANGLOFF, ETHAN ) | |
| CLARY, JOSHUA CRAWFORD, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Terrance Daugherty filed a motion for sanctions against Wexford Health Sources, Inc. (which is not a party to this case), seeking to recover attorney's fees and costs for time spent pursuing two subpoenas directed at Wexford. In short, Plaintiff says that during the meet and confer process associated with the subpoenas, Wexford purposefully obfuscated and lead Plaintiff to believe that the person he was looking for did not exist. Wexford, for its part, says that it looked at the four corners of the subpoena, and fulfilled its obligations to comply with the subpoena. The Court heard oral argument from the parties and took the matter under advisement. After careful consideration of the briefs and the oral argument, the motion for sanctions will be denied.

## BACKGROUND

The procedural history surrounding this discovery dispute is quite tortured. The specifics are mostly unnecessary for the Court's purposes here. However, the procedural history, as a whole, is relevant because it underscores the fact that Plaintiff and Wexford

have dedicated a significant amount of time and energy on this discovery matter. Plaintiff first served Wexford with a subpoena on March 16, 2021. The subpoena requested the following information: "Shift roster of your employees working on September 13, 2017 and September 14, 2017 at Lawrence Correctional Center in Sumner, IL. If employee Nurse Curry is to have worked on either date, please provide her current contact information." (Doc. 96-1). Wexford responded to the subpoena through its counsel, producing a redacted roster of employees showing last names only (Doc. 96-2). The correspondence from Wexford stated: "it is our determination that your subpoena ultimately seeks information for a 'Nurse Curry.'" (*Id.*). [1] Wexford noted that a total of 54 of its employees worked at Lawrence on the days in question (September 13 and 14, 2017) and none of the employees "are/were a 'Nurse Curry.'" (*Id.*).

Counsel had many meet and confer sessions. Plaintiff says he made it abundantly clear that he was simply looking for information on a Wexford employee named Nurse Curry. Plaintiff says he was lead to believe that Nurse Curry did not exist, so he served a second subpoena on Wexford on June 8, 2021. This subpoena sought photographs of Wexford employees (or the opportunity to inspect these photographs with counsel present) who were working in the healthcare unit on September 13, 2017 and September 14, 2017 at Lawrence (Doc. 96-3). Wexford's counsel objected to this subpoena, and again, the attorneys engaged in multiple meet and confer sessions. Ultimately, the meet and confer sessions did not resolve the issue and it prompted a motion to compel by Plaintiff

---

[1] In the correspondence, Wexford always referred to "Nurse Curry" in quotations. (*e.g.*, Doc. 96-1).

(Doc. 74). This motion was filed on July 7, 2021, and the Court set it for hearing on July 29, 2021 (Doc. 81). At this hearing, counsel for Wexford acknowledged that Plaintiff's counsel was looking for a Nurse Curry and that Wexford had interpreted that to mean that Plaintiff's counsel thought that the nurse's name who may have witnessed the incident in question in this case was named Curry (Doc. 95). This is important, says Plaintiff, because it again underscores the fact that Wexford always knew he was looking for a Wexford employee whose last name was Curry.

After all this, Plaintiff's counsel took the deposition of a Wexford employee named Amy Deel-Hout on November 5, 2021. At this deposition, Plaintiff learned that there is a Wexford employee whose last name is Curry (Doc. 96-7). Ms. Curry works as a PRN MHP (which stands for *pro re nata* mental health professional) (*Id.*). According to Ms. Deel-Hout, Ms. Curry comes in and will work on an as-needed basis and she was working in that capacity at Lawrence in 2017 (*Id.*). However, Ms. Curry did *not* work at Lawrence on either September 13 or 14, 2017 (Doc. 101).

Plaintiff ultimately did depose Ms. Curry. Indeed, Wexford agreed to voluntarily produce her for a deposition following the deposition of Ms. Deel-Hout. And Ms. Curry testified that she did not recognize Plaintiff, had no recollection of an assault by corrections officers on Plaintiff or any other inmate, and had no recollection of an assault by corrections officers on herself or a nurse (*See* Doc. 101). In short, Ms. Curry was a complete dead end for Plaintiff.

## DISCUSSION

Plaintiff's motion is labeled as one for sanctions, but a point that's missing from the motion is an explanation as to where the Court draws its authority to sanction a non-party for a violation of Federal Rule of Civil Procedure 45. Wexford's response brief does not touch on this issue either. So the Court begins with the Rule itself, and what authority, if any, it might provide to sanction a non-party. A review of the Rule reveals that subsection (g) is on point. Under Rule 45(g), "[t]he court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." FED. R. CIV. P. 45(g). To prevail on a request for a contempt finding under Rule 45(g), the Seventh Circuit has provided the following standard: the movant must demonstrate, by clear and convincing evidence, that "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

The "contempt provision" of Rule 45 "implies that all discovery subpoenas are contempt-sanctionable orders of the court whether issued in blank by the clerk or by an attorney as an officer of the court." *Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010)[2]; *see also Fisher*

---

[2] In *Hyatt*, the Court cites to Fed. R. Civ. P. 45(e), which at that time in 2010, was the contempt provision of Federal Rule 45. The Court's authority to punish disobedience of a subpoena remains unchanged. However, the current Rule 45(g) differs from the 2010 version – and specifically Rule 45(e) – because it was

*v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1340–41 (8th Cir. 1975)("A subpoena is a lawfully issued mandate of the court issued by the clerk thereof. It is the responsibility of every citizen to respond to this mandate. [A]nd it is within the court's power to force that response.") (internal citation omitted).

"It does not follow, however, that a contempt motion for disobedience of a nonparty subpoena should be treated in exactly the same way as a contempt motion for violation of another kind of court order." *Hyatt*, 621 F.3d at 693. Indeed, Rule 45 contains important provisions that are designed to protect a non-party from undue burden or expense, invasion of a privilege, or disclosure of protected material. *Id.* FED. R. CIV. P. 45(d) (Protecting a Person Subject to a Subpoena; Enforcement); *accord* FED. R. CIV. P. 45, 1991 Advisory Committee Notes ("'Adequate cause' for a failure to obey a subpoena remains undefined. In at least some circumstances, a non-party might be guilty of contempt for refusing to obey a subpoena even though the subpoena manifestly overreaches the appropriate limits of the subpoena power. But, because the command of the subpoena is not in fact one uttered by a judicial officer, contempt should be very sparingly applied when the non-party witness has been overborne by a party or attorney.") (internal citation omitted). The Seventh Circuit has succinctly said that the provisions of Rule 45 "suggest at a minimum that contempt motions for noncompliance

---

amended to make clear that, in the event of transfer of a subpoena-related motion, disobedience of a subpoena will be considered contemptable conduct of both the court where compliance is required and the court where the action is pending. *See* Fed. R. Civ. P. 45, 2013 Advisory Committee Notes on Subdivision (g)

with a discovery subpoena should be entertained with special attention to the procedural and substantive rights of the nonparty witness." *Hyatt*, 621 F.3d at 694.

Here, there is not really the suggestion that Plaintiff's two subpoenas imposed an undue burden on Wexford. Rather, the dispute is really a tug of war between what the four corners of the first subpoena said and the representations made and discussions that were had during the meet and confer process. Indeed, on this point, the briefs are quite telling. Plaintiff's motion contends that Wexford's actions here defy the *purpose and spirit* of the Federal Rules of Civil Procedure (*see* Doc. 96). And Wexford, for its part, says a search based on the four corners of the first subpoena would have never produced any information on an employee named Curry (nor would the second subpoena) (Doc. 101). According to Wexford, it fulfilled its obligation to respond to the subpoena and provided the information that was specifically requested.

Plaintiff's counsel, at oral argument, conceded that with the benefit of hindsight, he has been self-critical of the language contained in the first subpoena. This explains why Plaintiff's request for sanctions is devoid of any allegation of a concrete violation on the part of Wexford. The four corners of the subpoena allow Wexford to take the position that it complied with the subpoena, there is no discovery violation, and thus no need for sanctions. And this is what Rule 45(g) requires the Court to consider: has the non-party "fail[ed] without adequate excuse to **obey the subpoena** or an order related to it." (emphasis added). In this instance, the answer is no. There is simply no evidence that

Wexford violated the command of the subpoena. *See Hyatt*, 621 F.3d at 692.[3] And when the Court considers the special procedural and substantive rights of a non-party, the fact that discovery disputes related to Rule 45 must be treated differently, and the fact that there is not a concrete violation here, sanctions simply are not the answer.

But that is not to say that Wexford's conduct here is beyond reproach. Wexford seemingly knew from very early on that Plaintiff's counsel was looking for Nurse Curry. A logical and natural extension of that proposition is that Plaintiff was looking for a Wexford employee whose last name was Curry.[4] It does not seem like it would have taken much effort to expand the search for "Nurse" Curry just a tad. There can be little doubt that had Wexford done that from the outset, everyone would have learned back in March or April of 2021 that Wexford had an employee whose last name is Curry, but she was a *pro re nata* mental health professional, not a nurse, and while she worked at Lawrence in 2017, she did not work on the dates in question. In other words, this particular avenue is a dead end. But to be fair, there is no guarantee that would have ended Plaintiff's pursuit of discovery from the non-party. The photo lineup might have been conducted in any event to allow Plaintiff and his counsel to identify the person he had in mind. But to be sure, it would have avoided wasting countless attorney hours and

---

[3] Which means, the Court does not reach the question of whether or not the purported violation was significant and whether Wexford was "reasonable and diligent" in its efforts to comply. *See Hyatt*, 621 F.3d 687

[4] But, of course, that is not what the first subpoena said. It specifically requested shift rosters for employees working at Lawrence on September 13 and 14, 2017 and if "employee Nurse Curry is to have worked on either date, please provide her current contact information." (Doc. 96-1).

expenses on a road to nowhere. The Court can't help but think of the saying: "a little bit goes a long way." Here, just a little bit more effort up front, could have gone a long way.

This dispute really highlights what can be natural a friction between the four corners of a discovery request and the informal meet and confer process when lawyers should be drilling down on the issues, attempting to understand each other's position, and trying to craft a solution to their problem. As a result, the Court is compelled to make some observations in this vein. The meet and confer process is vital to the efficient functioning of the trial court. If officers of the court cannot rely on the representations they make to one another during informal discovery conferences, it will undermine the entire meet and confer process. This, in turn, will lead to more discovery motions and more of the Court's time dedicated toward the resolution of these motions and thus detracting judicial resources from resolving dispositive motions and trials. "If the parties can resolve their issue, the court's time is saved and available to be directed to those cases that present issues that cannot be amicably resolved. Each hour needlessly spent on a dispute is an hour squandered." *W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 959 (N.D. Ill. 2018). Resolving discovery disputes through the meet and confer process is also beneficial to the parties because judicial decision making in this realm is committed to the court's broad discretion. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016) (the district courts have broad discretion over discovery matters and discovery rulings are reviewed under an abuse of discretion standard and will be affirmed unless the judge's ruling "lacks a basis in law or fact or clearly appears to be arbitrary."). A decision that is committed to the Court's broad discretion, however, is inherently

unpredictable and leaves open the possibility of a decision where neither party is pleased. A negotiated resolution provides the parties certainty and predictability. All of this is to say that a cooperative, professional, and candid meet and confer process is critical to the Court's effective management of its civil caseload. And this is particularly true when a minimal amount of effort will conserve time and energy for both the parties and the Court.

But litigation is not a benevolent endeavor and there will be times when court intervention is required and times when sanctions are appropriate. And when it involves *parties* to the ligation, Rule 37 comes into play. *See Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 787 (7th Cir. 1994) (noting that under Rule 37, the winner is entitled to fees unless the opponent establishes that his position was "substantially justified" and awarding attorneys' fees for costs incurred in obtaining a protective order and defending her application for fees because "[n]othing less will make her whole; anything less would defeat the function of Rule 37(a)(4)."). And in the case of a subpoena to a non-party, Rule 45(g) provides the avenue to serve as both a coercive and compensatory sanction. *See Hyatt*, 621 F.3d at 692 (noting that civil contempt is a unique sanction because its aim is both coercive and compensatory); FED. R. CIV. P. 45, 1991 Advisory Committee's Note, (defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions).

Here, sanctions are not warranted because there simply is no violation of a court order. The limited caselaw on this subject makes clear that the moving party bears a

heavy burden if it wants to sanction a non-party. And here, Plaintiff does not meet that heavy burden and his motion must be denied.

## CONCLUSION

Plaintiff's motion for sanctions (Doc. 96) is **DENIED**. The Clerk of the Court is **DIRECTED to TERMINATE** Wexford Health Sources, Inc. as a Respondent in this action.

**IT IS SO ORDERED.**

**DATED: March 15, 2022**

                                            **s/ Mark Beatty**
                                            **MARK A. BEATTY**
                                            **United States Magistrate Judge**